IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

DERRICK L. WALKER,

    Plaintiff,

v.   CASE NO. 1:19-cv-190-AW-GRJ

CITY OF GAINESVILLE, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Pending before the Court is Plaintiff's First Amended Complaint, ECF No. 13. Plaintiff is proceeding *pro se* and *in forma pauperis* in this matter. Upon careful consideration, it is respectfully **RECOMMENDED** that the First Amended Complaint should be **DISMISSED** because the Court lacks subject-matter jurisdiction over this matter.

### I. BACKGROUND

**A.    The Initial Complaint**

Plaintiff initiated this lawsuit on October 9, 2019, against the City of Gainesville and four officers employed by the Gainesville Police Department ("GPD"). ECF No. 1. Plaintiff's allegations centered predominantly around an automobile accident that occurred on March 7, 2017. *Id.* at 7. Plaintiff claimed in the first section of the Complaint labeled

"42 U.S.C. Section 1983" that Defendant Officer Megan Bostick violated GPD policies by: failing to document the names of witnesses to the accident in the traffic crash report; impeding Plaintiff's "civil right to an efficient, effective and thorough investigation into the accident involving loss of life"; "enabl[ing] the witness and at-fault party to change their stories"; "initiat[ing] a special relationship which likewise create[d] a standard of care as the defendant [was] responsible for the parties involved and the scene until relieved or the investigation [was] complete[d]"; "participating … as an officer of the law in a cover up[] to help the at-fault party avoid responsibility and possible criminal charges as a result of the accident"; "failing to ensure that photographs [were] taken immediately to record proximate locations of vehicles, vehicle parts, drivers and occupants, and other scene references"; failing to report "the loss of life to the department so that an investigation into the accident involving a loss of life could begin"; failing to "contain protect and cordon off the area as a crime scene"; and refusing to update details provided in the traffic crash report. *Id.* at 7–11.  Plaintiff also alleged in the same section that "Whitney Stout and Jaret Weiland concluded and delivered a decision into misconduct and the handling of the crash as unsubstantiated." *Id.* at 10.

Plaintiff repeated these same allegations in the second, third, and fourth sections of the initial Complaint, labeled respectively as "Emotional Distress," "Obstruction of Justice," and "Professional Malpractice." ECF No. 1 at 11–24. Plaintiff further alleged in the Complaint's "Professional Malpractice" section[1] that he was wrongly arrested on March 11, 2018, by Defendant Joseph Register, who "failed to collect evidence and question witnesses that would have exonerated [Plaintiff] from the charges brought against him." *Id.* at 24. Plaintiff also claimed that on September 23, 2019, Defendant Register "witnessed indirectly and directly [Plaintiff's] life being threatened on multiple occasions and failed to take action" as "retaliation for filing IA complaints on his two partners." *Id.* at 25–27. Plaintiff identified Defendant Register's supposed partners as Defendants Keith Carlisle and Kelly Gadet, and Plaintiff averred they did the "same thing" to Plaintiff as Defendant Register on an unspecified date. *Id.* at 27–28.

Plaintiff ultimately complained that "[t]he failure of GPD to take action or protect [him] has lead [sic] to a situation where now people can openly threaten his life in front of officers and no action be taken." ECF No. 1 at 28. The last page of Plaintiff's Complaint was a list of potential causes of

---

[1] Plaintiff also included in this section allegations regarding parties who he did not name as defendants in this action and who are not otherwise before this court, namely an assistant state attorney and two judges for Florida's Eighth Judicial Circuit Court.

action and damages: "intentional infliction of emotional distress[,] PTSD[,] malicious prosecution[,] false light[,] malpractice[,] duty/standard of care[,] fraud[,] conspiracy[,] tortious interference[,] defamation[,] [and] mental anguish[.]" *Id.* at 29.

On October 15, 2019, the undersigned screened the initial Complaint and entered an order directing Plaintiff to amend his claims to fix multiple deficiencies or face dismissal. ECF No. 4. The undersigned warned Plaintiff that the initial Complaint was an impermissible shotgun pleading because he did not state what each Defendant did, or did not do, in support of each claim. *Id.* at 5 (citing *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320–23 (11th Cir. 2015)). The Court also cautioned Plaintiff that he failed to state a cognizable constitutional claim under 42 U.S.C. § 1983 against any of the Defendants and that the Court may lack subject-matter jurisdiction without such a claim. *Id.* at 5–6. Lastly, the Court explained to Plaintiff that the initial Complaint appeared to suffer from a misjoinder of claims and defendants because there was not "an apparent nexus between the automobile accident involving Defendant Bostick, Defendant Register's arrest of Plaintiff on March 11, 2018, and the unspecified actions of Defendants Carlisle and Gadet." *Id.* at 7.

4

B.   **The First Amended Complaint**

The First Amended Complaint, filed on January 27, 2020, is a significant departure from the initial Complaint. ECF No. 13. Notably, Plaintiff abandons his claims against the individual officers[2] and alleges the City of Gainesville, as well as the State of Florida, the University of Florida, and Progressive Select Insurance Company ("Progressive"), have "perpetrated a scheme to defraud Plaintiff willfully and maliciously by misrepresenting the facts surrounding a traffic accident and subsequent loss of life on the night of March 7, 2017[,]" which resulted in "an erroneous finding based upon sympathy as opposed to facts and actual fault, enabling the at-fault to then successfully file a completely fraudulent insurance claim against Plaintiff." *Id.* at 1–3.

Plaintiff restates the above-mentioned allegations against Officer Bostick concerning her investigation of the March 7 automobile accident, points to purported inaccuracies in reports by the medical examiner's office, and alleges new facts pertaining to an investigation into the accident by

---

[2] Although Plaintiff identifies individuals, including Officer Bostick, as "Defendants" on the second page of the First Amended Complaint, he does not allege any claims against them. ECF No. 13 at 2; *see also id.* at 6–9 (demanding "entry of a judgment" as to each claim "against Defendants University of Florida; City of Gainesville, Florida; State of Florida; and Progressive Select Insurance[.]"). Indeed, Plaintiff begins the First Amended Complaint with the statement that he "hereby sue[s] Defendants THE UNIVERSITY OF FLORIDA, THE STATE OF FLORIDA, THE CITY OF GAINESVILLE, FLORIDA, and PROGRESSIVE SELECT INSURANCE COMPANY; for damages." *Id.* at 1.

5

Progressive claims specialist Tracey Becker Catron.  ECF No. 13 at 4–6. Plaintiff claims that Catron was responsible for investigating the March 7 automobile accident on behalf of Progressive, she failed to act reasonably by relying solely on the traffic crash report and medical examiner's report, she made a false criminal allegation against Plaintiff accusing him of vandalizing the front door of her home, and she wrongfully found Plaintiff to be at fault for the March 7 automobile accident.  *Id.* at 5–6.

Plaintiff attempts to state four causes of action against Defendants. ECF No. 13 at 6–9.  *First,* Plaintiff alleges Defendants engaged in professional malpractice because they owed him "a duty of care … to adequately prevent a misrepresentation of facts surrounding the accident and subsequent reporting of events" and thereafter breached that duty, causing him to suffer damages.  *Id.* at 6.  *Second*, Plaintiff says that Defendants were negligent in the retention and supervision of their employees, who were "engaging in activities that were improper and harmful to Plaintiff, including but not limited to: (a) knowingly and purposefully misrepresenting the facts of the incident upon which a fraudulent claim was mad [sic]; and (b) enabling and furthering the events of 'The Accident, The Medical Examiner and The Insurance Company.'"  *Id.* at 7.  *Third*, Plaintiff claims that Defendants aided and abetted the fraud of

the at-fault party to the March 7 automobile accident because "[b]ut for Defendants' participation in 'The Accident, The Medical Examiner and The Insurance Company,' the fraudulent claim would not have succeeded" and "Defendants did not institute adequate policies and procedures to monitor their employees and prevent the very type of fraudulent omission and commission that occurred here[.]" *Id.* at 8.  *Fourth*, and finally, Plaintiff asserts that "Defendants conspired with one another … to perpetrate an unlawful act upon Plaintiff or to perpetrate a lawful act by unlawful means, to wit: Defendants misrepresented the facts of the accident and miscarriage, a collection of these misrepresentations where [sic] then used to file a fraudulent insurance claim against Plaintiff." *Id.* at 9.  As to relief, Plaintiff seeks damages in the "amount of 20 million dollars" for each claim divided equally among the four Defendants. *Id.* at 6–9.

## II.  LEGAL STANDARD

Where, as here, a plaintiff proceeds *in forma pauperis*, the Court must dismiss the case at any time if it determines the action "(i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2); *see also Mitchell v. Farcass*, 112 F.3d 1483, 1491 n.1 (Lay, J., concurring) ("Section 1915(e) applies to all [*in*

*forma pauperis*] litigants—prisoners who pay fees on an installment basis, prisoners who pay nothing, and nonprisoners in both categories."). The Court must liberally construe a *pro se* plaintiff's allegations, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), but the Court does not does not have "license to … rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action." *GJR Invs. v. Cty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Moreover, the Court has the authority and duty to review its subject-matter jurisdiction *sua sponte*. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines *at any time* that it lacks subject-matter jurisdiction, the court must dismiss the action." (emphasis added)); *Williams v. Chatman*, 510 F.3d 1290, 1293 (11th Cir. 2007) ("Federal courts are 'obligated to inquire into subject-matter jurisdiction *sua sponte* whenever it may be lacking.'" (quoting *Cadet v. Bulger*, 377 F.3d 1173, 1179 (11th Cir. 2004))). This is because federal courts have limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). In other words, this Court can only hear a case that presents a question about federal laws or the United States Constitution (as opposed to state law or common law causes of action), or a case where a citizen of one state sues a citizen of another

state and the amount in controversy is more than $75,000. 28 U.S.C. §§ 1331, 1332. A plaintiff invoking the Court's jurisdiction must establish the basis for such jurisdiction in the complaint. *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994).

## III.  DISCUSSION

Viewing the First Amended Complaint liberally, the undersigned concludes the Court lacks subject-matter jurisdiction over this matter. Plaintiff relies on diversity jurisdiction, ECF No. 13 at 3, which applies to actions between "(1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state…; (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and (4) a foreign state … as plaintiff and citizens of a State or of different States." 28 U.S.C. § 1332(a). Diversity jurisdiction requires "complete diversity"; that is, "every plaintiff must be diverse from every defendant." *Flintlock Cons. Servs., LLC v. Well Come Holdings, LLC*, 710 F.3d 1221, 1224 (11th Cir. 2013); *see also Brooks v. Paulk & Cope, Inc.*, 176 F. Supp. 2d 1270, 1273 (M.D. Ala. 2001) ("[U]nder the rule of 'complete diversity,' no plaintiff may share the same state citizenship with any defendant."). A natural person is a citizen of the state where he is domiciled, and domicile requires

9

residence and an intention to remain there indefinitely. *Travaglio v. American Express Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013).

Turning to this case, Plaintiff and the City of Gainesville are both citizens of Florida. *See* ECF No. 13 at 2 (""Plaintiff … is a registered voter and citizen of Alachua County, Florida."); *Moor v. Alameda Cty.*, 411 U.S. 693, 717 (1973) ("[A] political subdivision of a State, unless it is simply the arm or alter ego of the State, is a citizen of the State for diversity purposes."); *Bellsouth Telecomms., Inc. v. Vartec Telecom, Inc.*, 185 F. Supp. 2d 1280, 183 n.2 (N.D. Fla. 2002) ("[C]ities and many other governmental entities are citizens of the state for diversity purposes."). Although this fact establishes that there is not complete diversity, it is not the only defect.

Neither the State of Florida nor the University of Florida are "a citizen of a state for the purpose of diversity jurisdiction under 28 U.S.C. § 1332." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 412 (11th Cir. 1999). And as the Supreme Court recently recognized, "a State's presence as a party will destroy complete diversity." *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 174 (2014). So too here. Plaintiff cannot establish diversity jurisdiction where two of the defendants do not fit within any of the categories set forth in § 1332(a). *See Orchid Quay, LLC v.*

10

*Suncor Bristol Bay, LLC*, 178 F. Supp. 3d 1300, 1302 (S.D. Fla. 2016) ("Diversity jurisdiction does not exist when a state or the arm of a state is a party."); *In re Fresenius Granuflo/NaturaLyte Dialysate Prods. Liab. Litig.*, 76 F. Supp. 3d 268, 273 (D. Mass. 2015) ("As a matter of history, parties without any state citizenship, such as States, Indian tribes, or Americans domiciled abroad, have been treated as 'jurisdictional spoilers' whose mere presence in an action destroys complete diversity.").

Lastly, Plaintiff cannot rely on the *minimal* diversity of citizenship between himself and Defendant Progressive to establish subject-matter jurisdiction.[3]  Although courts have recognized that Defendant Progressive is a citizen of Ohio, *see, e.g.*, *White v. Progressive Select Ins. Co.*, No. 8:13-cv-2780-T-30-AEP, 2014 WL 172118, at *1 (M.D. Fla. Jan. 15, 2014), this is inconsequential here because (as explained above) there is not *complete* diversity between Plaintiff and the four Defendants.  What's more, any claim against Defendant Progressive alone would be subject to dismissal for improper claim-splitting because Plaintiff maintains a pending civil action against Progressive—in this Court—concerning the insurance claims stemming from the March 7 automobile accident.  *See Walker v.*

---

[3] It bears mentioning that Plaintiff does not allege Progressive's citizenship in the First Amended Complaint.  ECF No. 13 at 2–3.

11

*Progressive Select Ins. Co.*, No. 1:19-cv-182-AW-GRJ, ECF No. 1 (N.D. Fla. Sept. 9, 2019); *see also Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 840–42 (11th Cir. 2017) (explaining the application of the claim-splitting doctrine).

At bottom, Plaintiff has failed to establish diversity jurisdiction in this matter, thus warranting dismissal.  Ordinarily, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief," *Foman v. Davis*, 371 U.S. 178, 182 (1962), leave to amend "should be freely given," Fed. R. Civ. P. 15(a).  Under *Foman*, however, a district court may properly deny leave to amend the complaint when such amendment would be futile.  371 U.S. at 182.  The undersigned concludes that further amendment would be futile because Plaintiff cannot establish complete diversity or another basis for subject-matter jurisdiction based on the allegations underlying the First Amended Complaint, and he previously had the opportunity to file an amended complaint.

Finally, because the Court lacks subject-matter jurisdiction over this matter, the undersigned will not issue an advisory opinion examining whether Plaintiff's allegations of an overarching scheme to defraud involving a state university, a municipality, an insurance company, and the State of Florida are so clearly baseless, fanciful, fantastic, or delusional,

*Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992), that they should be dismissed as frivolous *or* whether they are sufficient to state a plausible claim against Defendants.  In any event, there is no question that Plaintiff's claims for monetary damages against the University of Florida—which should have been raised against the University's board of trustees[4]—and the State of Florida would also be subject to dismissal upon screening because these entities enjoy Eleventh Amendment immunity from suit in federal court (and nothing in the First Amended Complaint suggests that any exception to the Eleventh Amendment should apply).[5]

---

[4] *See Hui Li v. Univ. of Florida Bd. of Trustees*, No. 1:14-cv-236-RS-GRJ, 2015 WL 1781578, at *2 (N.D. Fla. Apr. 20, 2015) ("The program is governed by Defendant University of Florida Board of Trustees, which is the only University of Florida entity with the capacity to be sued." (citing Fla. Stat. § 1001.72(1))); *U.S. E.E.O.C. v. Fla. Gulf Coast Univ.*, No. 2:06-cv-326-FtM-29SPC, 2007 WL 2077577, at *2 (M.D. Fla. July 6, 2007) ("The Court concludes that The Gulf Coast University Board of Trustees is the proper party, and that The Gulf Coast University should be dismissed.").

[5] *See* U.S. Const., amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) ("Although by its terms the Amendment applies only to suits against a State by citizens of another State, our cases have extended the Amendment's applicability to suits by citizens against their own States."); *Baker v. Uni. Med. Servs. Ass'n, Inc.*, No. 8:16-cv-2978-T-30MAP, 2016 WL 7385811, at *2 (M.D. Fla. Dec. 21, 2016) ("It is well settled in Florida that state universities, and their boards of trustees, are arms of the state that are entitled to Eleventh Amendment immunity."); *see also* Fla. Stat. § 768.28(18) ("No provision of this section, or any other action of the Florida Statutes ... shall be construed to waive the immunity of the state or any of its agencies from suit *in federal court*, as such immunity is guaranteed by the Eleventh Amendment to the Constitution of the United States, unless such waiver is explicitly and definitely stated to be a waiver of the immunity of the state and its agencies from suit in federal court." (emphasis added)).

## IV. CONCLUSION

Accordingly, it is respectfully **RECOMMENDED** that Plaintiff's First Amended Complaint, ECF No. 13, should be **DISMISSED without leave to amend** for lack of subject-matter jurisdiction.

**IN CHAMBERS** this 15th day of April 2020.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636**.